Dennis O'Connor appearing for Michael Boulware. With me are Mr. Robert Waters, Mr. Kelvin Conashiro. I intend, Your Honor, to hit the highlights of this matter because there are so many issues involved in this case that it would be impossible to hit them all. I count roughly 22 issues. But I intend to go through the areas which involve the key jury instructions, the failure to admit to state court judgment, prosecutorial misconduct, insufficiency of evidence, and the sentencing issues. Starting with the jury instructions, the first jury instruction which we take major issue with is the instruction which defines income. And this is found in instruction number 10 given by the court. And the issue that we take is with the last sentence of that instruction which says, and I quote, when monies are acquired lawfully or unlawfully without consensual recognition of an obligation to repay or restriction on their disposition, such monies are income. We believe that to be an improper statement of the law and is not in conformity with the general definition of income adopted initially in Pohl v. Seaborne and followed in many cases since, which requires both dominion and control and ownership for income to be defined. One way or another, and there are obviously quite a few variations on that, but in this particular case, we believe that the court erred badly by making a disjunctive out of that sentence by saying without consensual recognition of an obligation to repay or restriction on their disposition, allowing the jury to simply define that if there was money without restriction on disposition, that that money would then be income or vice versa without consensual recognition of an obligation to repay. And the monies that were involved in this case, I won't go back through the whole history of the case, it's all in the briefs, were many. And they were monies that came through Mr. Boulware because he was the president, CEO, and major stockholder of a corporation and he handled the corporation pretty much for many years out of his pocket. And the monies flowed through him, sometimes by him, and those monies, many of them can be defined as income to him if this instruction is followed, and it was followed, it was given to the jury. So therefore, we urge that the court look at that definition of income and determine that it be, it's incorrect, really. Secondly, in these instructions, which, by the way, are in Volume 8, page 104, et sec., of the trial transcript, there is no instruction having to do with a bank deposit method of determining income. I'm sure the Court is given to the jury, telling the jury what the bank deposit method of income determination is and telling the jury what the fallacies are, potential fallacies in that use of that situation. Did you ask for such an instruction? No. Yes, we had such an instruction, I beg your pardon. Instruction number 14, I believe, Your Honor, and the government had such an instruction. The instructions were argued, but neither instruction was given by the judge. Mr. O'Connor, I don't see U.S. v. Hall cited in your opening brief. It is not, Your Honor. Did you raise this argument in the briefs, the U.S. v. Hall argument? Not in the opening brief, no. Is it in the reply brief? It is not as such. It is in the reply brief by way of reference to U.S. v. Hall, which has the same concept. My question to you is if you haven't waived this argument by not presenting it in your opening brief. It's our position that this argument cannot be waived, Your Honor. It's a requirement of this Court that such an instruction be given if the government chooses to use this method of determining income. I mean, it may be error for the judge not to do it. I just don't understand how you can bring it up on appeal for the first time in an oral argument. It's our position that by the very nature of the case U.S. v. Hall, it is plain error. It is something that has to be brought up at some time. Maybe you have to bring it up at a 2255 or something like that. It seems to me you're kind of too late to bring it up now. Well, I would suggest to the Court that that is not correct. It has to be brought up because of the nature of the error. And I would ask the Court to look at the decision in U.S. v. Hall to see whether or not this is not a proper time and proper forum to make this argument. It has to be. Moving on, the other areas in the jury instructions that we take issue with are the fact that the trial judge in instructing, attempting to instruct on good faith, took two existing instructions and simply added the two instructions which define the two tax crimes, instruction number four and instruction number 14, I believe, and simply added to the instruction words which said, quote, the defendant did not have a good faith belief that he was complying with the applicable provisions of the tax law. A belief may be in good faith even if it is unreasonable. First of all, the addition of those two sentences to those instructions, that's instruction number 15, four and 15, confuses the instruction completely, makes the instruction unintelligible. But more, it does not properly instruct in good faith, does not conform to the U.S. v. Cheek decision which requires that instruction, such an instruction. We have argued that there should have been a separate instruction on good faith as required by the Tenth and Eighth Circuits, but even if there was not a separate instruction, that the addition of that sentence just didn't do the job. There's no statement, for example, that if the defendant was not acting willfully, would not be acting willfully if he had a good faith belief in what he was doing. Well, there was a separate instruction on willfulness. There was on willfulness, but not on good faith. Right. Why wasn't the separate instruction on willfulness sufficient to cure any problems with the good faith instruction? Because that instruction, as the Court will know by looking at it, is a very short instruction and doesn't cover all the points raised in Cheek. And there was just no attempt to make all the points that are required by Cheek to instruct on good faith. The other instruction we took issue with was the advice of counsel instruction. The advice of counsel instruction does not say that if Boulware, the defendant, had a good faith belief that he was acting on advice of counsel, then he could not be convicted. The elements that are covered in the advice of counsel instruction are the bare elements in Williamson v. United States, but it doesn't go to the next step and pick up all of those matters which should be in that instruction and are not. The objections were raised to that, and we took some issue with all that. Basically, what we're talking about is the difference between, well, suffice it to say that that's our situation on instructions. We also urge some others in the brief which we would ask the Court to look at. Moving on, the state court judgment. In this case, a similar case had been tried in the Hawaii Circuit Court regarding the monies which were involved, the parties which were involved except for the government, and the issues which were involved. That was a case brought by Mr. Boulware's girlfriend and the mother of his children against him in the nature of a palimony case, the property side of a palimony case. She was seeking to get the dollars and money that had been given to her and the property which had been given to her as hers. She believed them to be hers, and the issue was were they hers or did they belong to his corporation, HIE? That case was a bitterly contested case. It went on for years. The trial was about a four-week trial. The issues had to do with who owned the property. Mr. Boulware had given her certain monies and property, and who owned that? It was a jury case. The jury came back with a verdict that most of the property was owned by HIE, and the monies which she was holding were HIE monies. The jury found that they were held in trust by her for the company. In this case, the government intends that those monies are income to Boulware. Now, it's our position that we want to put the judgment. One of the things that the state court did not determine, and this was a reason for both, I think, Judge Ezra's and Judge Rafiti's rulings, is who owned that property as between HIE and Boulware. That issue was not presented to the state court. It was not decided by the state court. If the court will look at the documents which we have referred to, which are in the record, the motion to adopt is controlling, which is at CR 98, and the motion to eliminate, which is at CR 191, the court will find the verdict, verdict form, the judgment, the finding of fact and conclusions of law, and on top of that, the bankruptcy matter. All that then went into bankruptcy, so that's a different issue. But all of those things in state court are appended, and you will see that as between Boulware and Jinsook Lee and as between Boulware and the company, there was a determination by the jury. Well, show me where, for instance. Point me to a page in the record that makes that determination. Look at CR 98. Which is what? Exhibit E. It's a motion to adopt as controlling, and Exhibit E to that motion is the verdict form. Okay. And the verdict form, I believe in number four, if my recollection is correct, the verdict form states as a finding as between Boulware and HIE on a promissory note, which the jury had to determine in addition to everything else. So there were determinations made as to who owned the property. It says the monies belong to Hawaiian Isle Enterprises. Yes, no, and they check the box that says yes. Is that what you're referring to? I believe so. I don't have the document before me, Judge. Well, I mean, that's the key document, though. There's nothing, though. Show us where the determination is made as to ownership as between HIE and Boulware. I beg your pardon. It was in the finding of fact and conclusions of law, finding number three. Of the State court? Of the State court. It's in the same area. Now, what page are you on? Exhibit G, finding of fact and conclusions of law, finding number three. And I don't have it. What's it say? It says it differentiated between the ---- Well, just read the part that you say makes the determination. In finding, what, finding of fact number three? Finding of fact and conclusions of law. I know, but which number three are you referring to, the finding or the conclusion? Finding. All right. What does it say? It says that HIE and Boulware, in contest over a $1,200,000 promissory note, the And by that finding and by the State's special verdict on question number 10, which was the document we were looking at earlier. Are you reading? Did you say you're reading from the findings of fact? No, I'm reading from our brief, which refers to this on page 18. No, no. I want you to point. Let me state my question again. I want you to point to whatever you're depending on in the record, which shows that the State court made a determination of the ownership of the property as between Boulware and HIE. And you spent about three or four minutes on it. You still haven't found it. I'll tell you, I have not found it. I've got findings of fact number three here. It says trial of this action was commenced on June 16, 1974, a jury. The jury returned a verdict by way of special verdict. The court reserved for its consideration the equitable issues and so forth. It says nothing about finding that the property belonged to Mr. Boulware as far as I can tell. Right. I agree with that. So my question is, what do you have on which to base your assertion that the State court made a finding of ownership as between HIE and Boulware? Look at question number 10. A pretty special verdict form. All right. Which questions where the monies belong to. What are you reading that shows that that? I'm showing Jinsuk Lee claims the cash and checks delivered to her during the period from March 1987 to May 1994 by Michael Boulware and Hawaiian Isles Enterprises were gifts. Michael Boulware and Hawaiian Isles Enterprises claimed the monies were not gifts but were to be held by Jinsuk Lee and to be returned when requested. State your finding below. Right. The first finding is they were not gifts. Right. The second finding, the monies belonged to Hawaiian Isles Enterprises. Right. And that has nothing to do with the ownership as between Hawaiian Isles and Boulware, does it? That does not. So my question again, what are you depending on that to back your assertion that the state court made a finding as to who owns this property as between Boulware and HIE? There's no such thing, is there, in the record? There are findings. Well, it looks to me like the closest you've got is conclusion of Law 3, which says there's a binding agreement between the plaintiff, Boulware, and HIE for the plaintiff to hold monies belonging to HIE to pay Boulware for her marital interest. That doesn't definitively decide the question. It just says there's an agreement. Pursuant to the agreement, monies belonging to HIE were entrusted to plaintiff. I mean, it may be relevant, but I think the point is well taken. There isn't a finding as to that specific element of ownership between the two. It wasn't contested in the case. Clearly, the three were parties to the action, Boulware, HIE, and Lee. The questions were put to the jury having to do with Boulware's obligation to pay Lee and Boulware's obligations to Lee. The question is, was there anything indicated there that Michael Boulware was contesting that he owned the money or did not own the money, or was there a finding? And I would direct the Court to findings through questions 5 and 6 of the special verdict form. In question 5, there was a finding that Boulware, Boulware, not HIE, had to pay Lee on a 1993 note. And question 6 is on that note, how much did he have to pay her? The answer is $250,000. So clearly, there were contested issues back and forth between all three parties, and they were sorted out in the findings of that. They were sorted out in the special verdict form, and I would urge the Court that the contest was between all three. Mr. O'Connor, I wonder if I can change the subject for a second and ask you about the sentencing hearing, particularly the calculation of the tax loss. Yes. If I understand correctly, what the district judge did was decide, based on everything that was presented to him, that no hearing was necessary, that he could decide what the tax loss was based on what he had in writing. You, I think, took the position that a hearing was necessary. Do I understand that right? Yes, that's exactly correct. Mr. O'Connor, can you tell me what a hearing would have established that wasn't before the judge? You may agree or disagree with what the judge did, but what would the hearing have shown? The hearing would have established tax loss. And, of course, going into the sentencing guidelines, the key thing in these cases is tax loss. No, but I mean, what fact would have come out of the hearing that you didn't present in writing is what I'm getting at. Well, we presented so much in writing, Your Honor, that's a very difficult question to answer. Well, that's what I'm saying. I'm not sure what a hearing would have gotten you. Well, we believe that there was an inability on the part of the trial judge to go through all of the material outside the status of a hearing that we presented to him. And we believe firmly that there should have been a hearing, particularly with the statements made in the PSR by the probation officer. The probation officer simply punted and punted the ball to the court, and the court, in determining tax loss, took part of the probation officer's report and interpolated its own tax loss. But, then, do I understand you correctly that you gave the judge everything he needed to properly calculate the tax loss, but that he didn't do it properly? Would that be fair to say? Well, it's very unfair for him to adopt that entire dollar amount as tax loss when all of the deductions and other subtractions should have been made from that dollar amount. Yeah, and those subtractions that he should have made, you presented to him in writing, and he just blew it as you see it. Well, I hate to just say yes categorically, because there might have been more stuff presented if we had had a hearing. But, yes, most of the information and material was in that compendium that we gave to him on sentencing. Okay. And the major reason for giving that was to have him determine there should have been a hearing. Well, let me ask you the same question a little differently. How did the district judge arrive at the amount of the tax loss? We believe, and he didn't say this, but we believe he took one of the exhibits in the presencing report and subtracted a number in that exhibit from another number, and I'm talking about exhibit D in the PSR, and came up with his own dollar amount that way. But he didn't say that. But if you do that, you come up with a dollar amount that he established. The same number that he came up with? Yes, Your Honor. All right. But I can't answer that question. You can tell you're over your time, right? I am concerned. Well, this is a complicated case. We'll give you two minutes for rebuttal. Thank you very much, Your Honor. Just hear from the government. May it please the Court. Karen Quinnell, appearing on behalf of the United States. The instruction that the district court gave the jury on the definition of income came directly out of this court's opinion in Swallow, and it is essentially the same language used in James, the James case out of the Supreme Court. And if the jury was to follow that instruction, it would have found that both conditions had to exist in order for the funds diverted by the defendant to constitute income. The court used an or in there in a way that was a little bit confusing. It was the court did use an or in that way, in that sentence. It's actually a common parlance. For example, an example would be David Blaine attempted to survive above London in a box without food or water. Everyone would assume he was trying to do it without either of those things, not without one or the other. And, in fact, that is the common-sense application that the Court gave in Swallow when they used that exact same language. Right. But I think in this context, it did at least to some credence the argument that the jury might have misconstrued it. It's not a simple definition. It is correct. Furthermore, on the bank deposits issue. Before you get to that, though, I mean, James was an embezzlement case. Standing alone, this definition, I mean, this isn't an embezzlement case per se. Standing alone, without clarification, how wouldn't any distribution of capital fit the definition of income as given by the judge in this case? Well, the government did not say that this was a distribution of capital, nor did the defendant ever treat it as a distribution of capital. No, I'm just asking. I'm just asking, not in this case. I'm just asking generically, because it seems to me it's a misleading definition of income if not clarified with other instructions. You mean if it's a return of capital, then that can be treated as non-taxable income? Sure. Certainly that's correct. Under this definition, if a person receives income with no obligation to repay and no restriction on the disposition, it would constitute income. Right, but any distribution of capital. I'm sorry to interrupt you. That's fine. Any distribution of capital would probably meet the same criteria, wouldn't  Were the defendant who wanted the jury to consider the question of whether this was a return of capital, he would have to show whether the corporation had earnings and profits, what his basis was. He would have to request an instruction on earnings and profits, and in this case the defendant did not do so. I understand your argument. I'm speaking at a little different level. I mean, I guess I'm speaking about getting the law right on this, because you can see James is an embezzlement case. In looking at the instruction, it occurred to me that there are many, if we say that this is what's required, then in fact we may be criminalizing some perfectly legal activities such as a distribution of capital, or in this case their argument is that it was a trust imposed. Or a loan, depending on which piece of income you're talking about. Right. But, yeah, they had various defenses as to each particular thing. I understand your argument. Naturally, the instructions in each case are going to have to be tailored to the circumstances. And in this case, his defense was, A, I couldn't do what I wanted with this money. I had to give it to Jinsook Lee, who was going to hold it in trust. So there was a restriction on disposition. Or it was a loan and I had to pay it back. So this instruction was tailored to the specific issues raised in this case by the defense, raised by the defendant. And if he wanted it to be, if he wanted to make some kind of argument that it was a return of capital, then under Bach, for example, he needs to make certain factual showings in order to get a proper instruction on that, which was not done in this case. So in this case, under the facts faced by the jury and the questions that they had to decide, this instruction was sufficient. Obviously, as Your Honor mentions, in other cases where facts are different, this instruction may not be sufficient. The jury may need to get additional clarification on the issues before it. But here, it addressed the issues before the jury. Roberts. Okay. Thank you. As to the bank deposits instruction, as a preliminary matter, the defendant has waived this argument. I just read the case that they cite in favor of this on the plane out here. I did not have an opportunity to do research on the issue. However, I did look back at the trial transcript. And what actually happened is an agent for the government did an analysis as part of the investigation of two bank accounts that the defendant used that were unknown to the controller of his corporation, into which he deposited funds he received from over-the-counter coffee sales and certain tobacco sales, I believe. And the agent analyzed the deposits into that bank account, and he did describe it as a bank deposits analysis, although it was not, if you look at the testimony, not a bank deposits analysis in the traditional sense in that what he did was he took all of the deposits from those accounts. He eliminated every cash deposit because he didn't want to mess with that or try to figure out what the source was of those funds. He eliminated every interbank transfer. He eliminated everything that HIE's books showed that they had loaned the defendant, leaving him with a list of checks. What he then did was send out a survey to all of the people, all of the payors on those checks to say, what did you pay these checks to Michael Boulware for? Forty-five percent of those people responded and sent back invoices. Here it was for coffee. It was for tobacco. He inferred then that any check that looked like those 45 percent that he was able to specifically identify was, in fact, for tobacco or coffee sales that was their income diverted from defendant from his corporation. So I do not believe that this was the kind of complex circumstantial method of proof like the net worth method of proof or a traditional bank deposits method that would have required these kinds of instructions. But if the Court does have any concerns about this, the government would like to have an opportunity to file some written supplemental briefing. The good-faith instruction given by the Court, well, first of all, the Court didn't have to give a separate good-faith instruction, as Your Honor recognized, under Pomponio and Cheek. If the district court properly defines willfulness, it does not have to give a separate good-faith instruction. But in this case, the Court, following the Ninth Circuit suggested manner of doing it in the pattern jury instructions, included as a fourth or fifth element in the tax offenses that the government had to prove that the defendant did not act in good faith. And clearly under those instructions, if the jury found that the defendant did act in good faith, they would have had to acquit him, because the jury was instructed they had to find each of these elements beyond a reasonable doubt. So there was no need for a further instruction, and if you find that the defendant did act in good faith, then you must acquit him. It was obvious from the way that the instructions were given. Furthermore, Cheek does not require any sort of specific magic language. The only thing Cheek requires is that an instruction not inform the jury that the defendant's good-faith belief must be objectively reasonable. And here, of course, there was no suggestion whatsoever that the belief had to be subjectively reasonable, had to be objectively reasonable. In fact, the Court told the jury that the good-faith belief could be completely unreasonable as long as the defendant believed it in good faith. The reliance on counsel instruction was correct. It included all of the required elements, and it properly placed the burden of going forth on the defendant. Of course, the government retains the ultimate burden of persuasion, proving that the defendant did not act in good faith, relying on advice of counsel. And the instruction specifically told the jury that reliance on counsel is a defense. Obviously, the jury would have known that that meant if the defendant proved he met all those requirements and relied on advice given to him by counsel, they could not convict him, because that's what a defense means. On the State court judgment, Your Honors, even if the State court judgment had made it, the resolution of whether HIE, Bulware, or Jinsuk Lee owned that, was the owner of those funds, the district court properly excluded that verdict. A State court verdict is not admissible, it's hearsay, unless it falls within an exception. There are no exceptions that we could find that would have covered this. Furthermore ---- The exception is that it's a determination of property rights. It's a determination of property rights, however, Your Honor, under the full faith and credit clause, this Court, a Federal court, must give the same preclusive effect to a State court judgment, that the State courts would give that judgment. And in Hawaii, under ---- for issue preclusion, collateral estoppel, and res judicata, one of the elements is the parties must be the same or in privity with the same parties to the prior suit. No, no. It's not a matter of, you know, estoppel or preclusion. It's a matter of Federal law providing, tax law providing that property rights are determined by State law, right, including State court judgments. That's if you need an exception. That's the exception to the hearsay rule under which it, you know, might come in. And it is a determination of property rights, which is, to me, wholly inconsistent with the government's position in this case that these monies were gifted from Bulware to Lee. If they were, you know, if they were gifted from Bulware to Lee, they couldn't possibly be the property of HIE. That's right. It's totally inconsistent. So I think that, to me, I think Judge Rafiti's, I think it was his determination that it was irrelevant. It's just clear error. It was indefensible. And the question is, is it prejudicial? Well, first of all, it's certainly not clear error. It was correct. And if you look at the courts, for example, if you look at Solterman, Ninth Circuit case, there had been a State court determination that distribution of property as between spouses was of a certain character. This Court said the question here was the intent of the parties, and we are not going to bind the United States by this Florida State court judge, that this was a payment in exchange for, I believe, the wife's interest in property as opposed to alimony. Also, if you look at this Court's decision in Boucher, they distinguished Solterman where they said in Solterman it was not binding because the question before the State court was the intent of the parties. In Boucher, it was the State court itself that was creating the property interest, not adjudicating what sort of property interest there was in the property. Isn't that confusing, though, the preclusive effect argument with admissibility? I mean, I grant you that it's not preclusive. Or at least I'm inclined to say it's not entitled to preclusive effect. But it does seem to be highly relevant to the issues at hand. Now, you could – you would – if admitted, then you would be able to make the arguments that you have that it's determined by the issues and ask for an instruction on that. Well, even assuming that it was admissible, there are several cases which we've cited in our brief discussing the substantial prejudicial nature of such evidence. For example, a Federal jury might be confused and believe that somehow they're bound by a State verdict. Well, you can ask for an instruction on that. I mean, obviously – obviously, they want to get it in. I mean, most evidence is prejudicial one way or the other. That's why you put it in. That's certainly true. It's unfair prejudice. And the courts have recognized this. My question is, why is it unfair prejudice if you're allowed to explain the effect of unfair instruction? I think the unfair prejudice is that, notwithstanding an explanation, the jury may indeed be confused. Yes, for example, you have a State court that hears, we don't know what kind of evidence, we don't know what evidence was put in, we had no opportunity. The government obviously had no opportunity to participate in that. The jury in the State court is deciding the exact same issue that the Federal jury is being asked to decide what was the intent of the parties at the time of the distribution. And, in fact, the State court jury was asked to determine what is the situation now. And they found that now, as between HIE and Jinsook Lee, HIE had the better claim to the money. It sounds like you could have made a good argument to that, even if the evidence had been admitted. I mean, my question is, it seems to me that a jury properly instructed and with argument skillfully delivered by a government counsel that would have significantly reduced the possibility of confusion. It's certainly highly relevant evidence. There's no doubt about that. Well, even assuming that it is relevant and somehow we could get over the issue of prejudice, under what – it certainly is hearsay. There's no one available for us to cross-examine. And it's not admissible as a public record. Why not? Well, a public record under 8038 is basically for investigative sort of things. And there are many cases that we cited in our brief that say this does not go to State jury verdicts where the jury is making a finding of fact, because it – the public records exception is largely for investigatory work, investigatory reports. And it's not for – it is not for State juries finding facts. Right. The verdict itself may not be, but the judgment certainly can be admitted. And for what it's worth, the findings of fact and conclusions of law. As what? A public record? Yeah. As a certified document, perhaps? Sure. Well, as I say, you know, there are some cases that admitted State court judgments under 803.14 and 50. You know, it's a record about, you know, property rights. That's correct. Property rights. I looked at – quite extensively at 803.14 and 50. And those exceptions appear to refer to documents that refer back to recorded documents. Well, in fact, 803.14 specifically refers only to documents that contain statements made in recorded documents. Now, that's documents of title, liens, things like – things like that that are recorded in court. Was this – was this recorded in the sense required by 803.14? I don't know why it was. In Montana, the judgments were considered – in fact, property rights were considered in the same category. In any event, I think perhaps the guts of one of your questions was, even assuming that it was error to exclude this, was it harmless? And I think it clearly was, because the evidence in this case was overwhelming that that – the money that the defendant diverted was his money and that he took it with no requirement that he repay that money and that there was no restriction on what he did with that money. And the government believes that the information submitted to the State jury during that trial did not include evidence that we put in in front of our jury in this case and that, therefore, even if the State court judgment could have somehow come in, there was not harm to the defendant by its exclusion. Let me – let me ask you this. I've kind of gotten lost where the – where the relevancy is now. Why do you claim the judgment was not relevant? I never said it was not relevant. I said it was inadmissible. And if it was relevant. On the grounds that it's – why? If it was – I'm sorry. You say you agree that it's relevant? You agree that it's probative? Certainly. If I was the defendant, I would want that in. The State jury had found in my favor, basically, found that that money was HIE's. Obviously, that's why he wanted to put it into evidence. And the judge said it was not relevant. Did the judge say it was not relevant or not admissible? I thought he said it's not relevant. And that's what Judge Toshima was asking. He wasn't that clearly erroneous. Is that Judge Ezra's opinion? I thought it was Judge Raffiti. I thought it was Judge Raffiti. It could have been Judge Ezra. I don't have that in front of me, and I do not have a complete recollection of what he said. I apologize. Okay. Thank you. Okay. On the sentencing, I think it's clear that the defendant had submitted to the court everything that the court needed to decide how to compute the tax liability. What the court did was it took a number that the probation officer had calculated, which included Federal and State income tax losses and approximately, I think, $25 million in Hawaii tobacco tax losses. Everybody at the sentencing hearing seemed to have expected that an evidentiary hearing would be held, right, which, to me, underlying that would be, you know, a common belief that the record is not clear enough to establish tax loss. Well, I'm afraid I don't know whether the government anticipated that there would be an evidentiary hearing. Obviously, the defense had asked for an evidentiary hearing, and the court explained when he came on to the bench that day that he had reviewed and read everything, given extensive and careful consideration to everything that he'd read and done considerable amount of research. And he also said, I'm not going to calculate the defendant's tax liability, didn't he? He said, I'm going to make a reasonable estimate. As is provided by the tax loss guidelines. How did he come up with the number he came up with? What he did was he took the number that the probation officer used, which was for Federal income tax, State income tax, and the Hawaii tobacco tax. He took out all of the Hawaii tobacco tax. He said he found that was not relevant conduct. That left the remaining Federal income tax and State income tax. And he used the numbers that were established by the government during trial and presented through the witnesses. Again, I'm going to have a hard time following this. He started with a he used as the starting number. What was the starting number? And how much Mr. Goldwater got his hands on? I believe it was $8 million plus $25 million, although I'm not 100 percent sure of the number for the Hawaii tobacco tax. But, I mean, he took as the starting number X dollars that Mr. Goldwater supposedly diverted from the corporation. Right? No, no. I'm talking about the tax loss. Oh, my. Don't you have to find out what the income is, subtract deductions. That leaves you taxable income. And then based on taxable income, you figure out what the tax loss is. Right. Okay. Then there were two components to the calculation. One was the Hawaii tobacco tax, which he excluded. The other one, the probation officer. Probation, you mean? I'm sorry. I think I was talking over you. Okay. I'm having a hard time recreating the numbers. And if I'm correct, that you start with what the gross income is. Okay. And then you subtract from gross income deductions to get to taxable income. And then you figure out what the tax is on taxable income. That would be one way to do it, wouldn't it? Yes. The taxable income for the defendant himself was $10 million. Then there were the judge added in income tax that should have been paid by the corporation on the diverted funds. And I don't know the number for that. And then he took, I believe, 28% of those numbers, and that left $8 million, some $8 million. And also I left out the defendant's state income tax that he had not paid on the unreported $10 million. So there are essentially four components to the tax loss number that the court used, the defendant's federal income tax and state income tax, and the corporation's federal income tax and state income tax. What about the fact that, which appears to be the case, that the sentencing judge never squarely ruled on the sentencing objections of the defendant? Which objections? As to the deductions and credits he was entitled to? Yes, everything. And the computation of tax law. He just said, well, this is my calculation. He didn't really address the objections. He addressed them, and he rejected them. He said, I am not going to go through and do an audit, and I am not going to pursue. That's exactly it. He says, I'm not going to. In effect, he's saying, I'm not going to address your objections. He's saying, I refuse to. This is my ultimate answer. He's saying, I refuse to. Does that have compliance with Rule 32? Yes, it does, because we know exactly what he did. Well. He said, I'm not going to give you credit for deductions and things that you might have done later on. Here's the tax liability, which is proper under the guidelines, because the tax loss is the amount of the loss that would have resulted had the offense been successfully completed. And all these credits and deductions that the defendant claimed he was entitled to were based on adjustments to the corporate books and records that he made after the fact, and also as to the corporate income, based on his theory that, well, when I made this adjustment to the corporate records to adjust for this Hawaii tobacco tax that I believe I had overpaid, when I did that, I had actually reported more income, and so that adjustment really meant that I was reporting this income that I was diverting, even though you can't tell from the books and records that those transactions are reported because they're not, because what he was doing was recouping this alleged overpayment of tobacco tax. And as we pointed out in our brief, if he was entitled to do that self-help on the corporate tax, then what he should have reported as income was even higher, because we also should have added in the diverted money, because the adjustment for the tobacco tax did not somehow report other income from coffee and tobacco sales that he was diverting to his private bank account. All right, Ms. Quinnell. Thank you very much, Your Honor. Thank you. Thank you. Rebuttal? Just a couple of quick points, Your Honor. First, as to the instruction in question, Swallow is a Tenth Circuit case, not a Ninth Circuit case. Secondly, Swallow does not say the same as James. Swallow says, or, and James says, and, in that crucial sentence. Third, that instruction is supposed to be simple, so that the jury reading, understand these instructions went into the jury. The jury reading that instruction is supposed to have the ability to simply determine what income is from the instruction. And I would urge the Court that you can't, everybody has trouble reading that thing. If you have to go to Webster's dictionary, or whichever dictionary the government cited to you to go to, to find out what that sentence means, it certainly is not simple. The Court asked the question about distribution of capital. Yes, distribution of capital is not income, but it would fit clearly under that instruction as income to be taxed. Shifting to the State court judgment, the State court judgment is not hearsay. It's an exception to the hearsay rule, 803.14 and 803.15, which are both in our brief, which outlines clearly what the State court judgment categorized as far as hearsay is concerned. What about the government's sort of fallback argument? Well, even assuming it was error to exclude the State court judgment, the evidence was so overwhelming against the defendant that any non-constitutional error was harmless. Exactly the contrary, Your Honor. That State court judgment was used by the accountants for the company to do the company books, was used by the expert witnesses to prepare for this trial, was used by attorneys and other people in giving advice to Boulware. If you're going to argue about willfulness and intent, Boulware is told, and this was some of the evidence at trial, look, you've already won the case in the State court. You don't have to worry about this and that in your income tax return. Boulware could have revised his income tax return early on and probably saved an awful lot of grief. He didn't. And he stood up to the State court situation and the IRS by claiming that these monies were all accounted for in the company, the company paid tax on all of these monies, and that they were monies which were not income to him. Again, year after year. And a lot of that had to do with what was happening in that State court case. It went on for a lot of years. I tried it. So just a couple of other points. The sentencing situation, Judge Rafiti had an awful lot of material given to him, but Judge Rafiti simply booted it. And again, I'll say that if you read the PSR, the probation sentence report, you will see in that report the fact that the probation officer believed there would be an evidentiary hearing. And she backed away from making determinations in this whole area of taxable income. And she said it was so complex, she didn't want to get into it. When Rafiti got it in front of him, he said, it's so complex, I will not do a tax audit. Yes, I've looked at all some of this material, or all the material, but I will not do a tax audit. I will not have a hearing. And I would urge the Court that all the cases that we have from this Court and others, in that circumstance, the trial judge should have a hearing to determine taxable income before he sentences. Thank you very much. Thank you. Thank you, Mr. O'Connor. Thank you, Ms. Cornell. This case is submitted for decision. That being the last case on today's calendar, we'll stand in recess at this time. All rise. Ms. Hickman? Yes. Would you kindly ask Judges DeShima and Thomas to call me back when the conference begins? Yes, I'll be right back. Thank you. Okay, I'm going to hang up now. Thank you. Thank you. Thank you. Thank you. Okay. Thank you. Dean, is that you? Hello. Hello. Hello. Hello. Hello. Can we help you? Excuse us, Judge. The clerk's not here. Oh, okay. Who have I got?     Okay. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Do you want us to do something? I wonder if Adrienne Hickman's around, if you wouldn't mind asking her to place the call from the conference room. I think that would probably be the best bet. They have your number, Judge? Oh, wait. Hang on. I'm going to hang up. I think they're on the other line. Thank you guys. Bye-bye. Thank you. Good. The judge got us. Yeah, the judge got us. I did. Well, one's going out today. I was a zombie. I was a freaking zombie. Hello?     Thank you. Thank you. Thank you. Thank you.
judges: Tashima, Thomas, Silverman